# EXHIBIT 2

# RANDALL W JAQUES

Safety Expert
Physical Security Consultant

5572 NW 114th Ave unit 104
Doral, Florida 33178
Cellular 305 498 3260
jaquesrandy@hotmail.com

## SUMMARY:

**Cruise Line Security and Safety Manager**: V-Ships, Holland America, NCL, CCL, Disney
**Military History**: 29 years, Army, Air Force, USMCR (Retired)
**Law Enforcement**: RPD, CGPD, WCSDPD (Vested Retired)
**DOD Army contractor Afghanistan**: 2 years

I have been educated and trained in the areas of maritime safety, security and maritime operations. I have extensive experience investigating and analyzing maritime, marine, and resort accidents worldwide over a period of 25 years while employed as a security manager and safety officer, Certified Homicide Investigator, Marine Patrol Officer and level IV certified SSO ships security officer. I was also trained in advanced accident investigation, accident reconstruction and traffic homicide investigation while I was employed as a traffic homicide investigator and conducting Accident Reconstructions.

I serve as an expert witness in cases involving accidents at sea, slip and falls, sexual harassments, assault, death at sea, shore excursions, pools, water slides and more, premises liability and physical security, analyzing their causes and responsibilities of parties involved and consulting with attorneys from both sides. I provide analyses, reports, depositions, and court testimony. I work for both plaintiffs and defendants.

As a safety expert I have conducted approximately 5,000 vehicular accident investigations, 1,500 shipboard injury investigations, over 100 marine boating accidents, 72 pool accidents, resort accidents, 200 shore excursion cases worldwide. Continued training includes course work in photography, measurement analysis and accident scene diagramming. For the cases I am retained in, I am fully prepared to conduct site inspections of the scene, take photographs, measurements, and collect data under the Daubert Rule in US Federal Courts.

## EDUCATION AND QUALIFICATIONS:

**Career College of the Air Force**: AA Logistical operations/ Special cargo handling and hazardous materials, load planning and load configuration (Technical Degree) 1996 – 1999
**Miami Dade College**: ICJ Mechanical Engineering, Accident Reconstruction, Advances Accident Reconstruction, Traffic Homicide, Academy Instructor, Field Training Officer courses, Marine Patrol Officer, Safety Driver Instructor, EMT I, EMT II
**Police Vocational Training**: IPTM Jacksonville, Florida1984 – 1989,
**Police Academy** – graduated 1982
**Reno High School** Nevada –graduated 1976

## MEMBERSHIPS AND AFFILIATIONS:

- Society of Accident Reconstruction
- ASIS International - Certified Security Consultant
- NCO retired Department of the Army
- Navy League member since 1978
- ASTM International
- Water Parks Association
- United States Coast Guard Investigators Association
- Sector Miami US Coast Guard Ombudsman

## JOURNAL ARTICLES, TV AND COLUMNS:

1) Inside Edition: *Booze Cruises* Part I
2) Inside Edition: *Crimes at Sea*, alcohol related problems at sea Part II
3) ABC Primetime: *Crimes at Sea* special
4) ITV undercover cruise ship documentary: *Accidents at Sea*
5) Channel 5 Canadian TV: *Accidents and Crimes at Sea, Dangers to Passengers*
6) *UK radio talk show: The Perils of Passengers on Holidays*
7) Security director's magazine: *Crimes at Sea*
8) Greenwich NY Times article on cruise ship crime and accidents at sea
9) ABC 20/20: *Cruise Confidential*
10) Inside Edition: *Cruise Ship Over Serving of Alcohol* and crimes related to intoxication
11) Anderson Cooper 360: *Sexual Assaults at Sea.*

## EXPERT WITNESS & INVESTIGATIVE CASE HISTORY:

- 1,500 shipboard accident investigations, worldwide
- 200 marine and small craft and yachting accidents
- 80 maritime accident and death cases
- 72 Pool accident and water slide injury cases, passenger vessel and water park
- 200 shore excursion injury cases world wide
- 25 police policy and procedure cases
- 2 civil rights violation cases
- 30 premises liability cases involving injury or death
- 5,000 vehicular accident cases.

## HISTORY OF EMPLOYMENT:

**EXPERT WITNESS AND CONSULTANT ( ATA RECONSTRUCTION, TEXAS) SUB-CONTRACTOR**
**2012- PRESENT**

**EXPERT WITNESS AND MARITIME CONSULTANT**                    **2003 – PRESENT**
- Maritime Safety and Security expert testimony and consulting
- Consult with admiralty attorneys and provide case analysis
- Specialize in sexual assaults, aggravated battery, death at sea, all passenger/crew accidents

- Provide extensive rule 26 reports for filing in federal court
- Conduct ship inspections with video, photographs and diagramming
- Resort crimes and resort accidents involving pools and slides.

### MARITIME SECURITY AND SAFETY OFFICER (F/T & P/T):

**V-Ships Maritime, Holland America Cruise Line, Norwegian Cruise Line, Carnival Cruise Line, Disney Cruise Lines**                                                    **OCT 1991 – APR 2007**

- Responsible for safety of all passengers and crew at sea
- Investigated all criminal & civil cases and accidents at sea
- Cross trained waste management & environmental policy and procedures
- Cross trained as a Safety Officer conducting drills, training, investigations, rescue diving
- Prepared weekly work schedule, evaluated and conducted new hire training
- Familiar with Immigration & Customs procedures in various ports of call worldwide
- Conducted all new crew safety and security training
- Maintained and enforced policies, procedures and regulations.

**School Security and Safety Manager - Gulliver Academy Schools**          **SEP 2009 – DEC 2010**

### MILITARY HISTORY:

**Retired SFC (MP) - US Army National Guard 29 years**          **Nov 1975 – Oct 2008**
- Operation Enduring Freedom 3 tours
- Military Police Operations Investigator/Homicide investigator
- Special Forces Operations NCO USASFC Desert Storm
- Logistics and Operations NCOIC OEF/OIF
- Honorable Discharge/Secret Clearance/State Honor Guard Member
- Office of the Inspector General Gulf War operations NCO SF

**Department of Defense Army Contractor 2 years**
- Site Manager of International linguists and military operations FOB and PRT areas
- Coordinate with 3rd SF & other site managers establishing team monitoring
- Work directly with SF military linguist coordinators on a daily basis
- Prepare administrative files and excel files on all linguists
- Travel throughout the AOR in support of the linguist needs and the needs of the mission
- Prepare linguists for deployment throughout the AOR

**United States Southern Command, SSgt USAFR 3 years**
- Group Logistics and Air Operations NCO
- Asst. Chief of Training Human Rights

### LAW ENFORCEMENT:

**Washoe County School District PD – School Police Officer**          **MAR 1995 - SEP 1999**
- Responsible for maintaining a safe and secure environment

- Investigates all criminal activity on school grounds
- Lectures students and teachers in drug/alcohol awareness DARE Instructor
- Manages all security services staff

**City of Coral Gables Police Department - Traffic Homicide Investigator       JUN 1982 – MAY 1989**
- Miami Dade Police Academy Instructor & SWAT Officer
- Responsible for public safety and crime prevention
- Attended advanced police training, FTO, Academy Inst.
- Promoted to narcotics detective/ operation blue lightening/ marine patrol officer
- Field training officer for 3 years & Police Academy Instructor
- Lead Investigator Traffic Homicide Division
- Awarded Officer of the Month 28 commendations

**City of Reno Police Department – Police Officer/K9 Officer       JAN 1980 – JUN 1982**
- Attended basic academy 480 hours
- Graduated top 10% of my class
- Assigned to the patrol division and foot patrol downtown casino district
- Attended K-9 dog handler school
- Officer of the month for capture of a homicide suspect

**SPECIAL CERTIFICATIONS:**

1.   Survival craft crewman basic course, Environmental Training Course Level 3 - 2005
2.   Certified Level 4 SSO Highest Tier Ship's Security Officer 2005
3.   Deployment course SW Asia Nuclear Chemical and Biological warfare - 2006
4.   Rescue Diver course Dominican Republic (PADI) - 2000
5.   Swimming Instructor (USMCR) - 2001
6.   USCG Qualified Seaman's course and survival craft crewman in accordance with STCW 95, Lifeboat Commander, A-V1/1-4, Crises Management and Human Behavior A-V3 Environmental, A-V1/1-1 Survival Techniques, AVl-3 Advanced Fire Fighter, A-V1/2 Survival Craft & Rescue Boats, A-V1/1-3 First Aid/CPR, EMT-I, AV1/1-2 Fire Prevention and Fire Fighting, Instructor in use of Dangerous Drugs, Safety swimmer and Rescue Diver. 1993 – 2003

**AWARDS AND ACCOMPLISHMENTS:**

1974 - BSA Eagle Scout, scout of the year Miami Dade County, Florida
1979 - US Army Soldiers medal for courage under fire
1985 - Officer of the Year, City of Coral Gables Police Department, Florida
1999 - NCO of the Quarter US Southern Command, Miami Florida
2003 - Recognition by USCG and US Customs for the largest seizure of heroin - San Juan, Puerto Rico
2003 - Recognition by the FBI for capture of sexual assault predators at sea
2004 - Meritorious service medal, operation enduring freedom, Afghanistan
2008 - Honorable Discharge after 29 yrs of military service ARNG, Retired.

References available upon request

**Randall W. Jaques**
**2580 Rampart Way North**
**Cooper City, Florida 33026**
**305-498-3260**
**jaquesrandy@hotmail.com**

**Testimonials and Rate Sheet: Depositions are billed at 350.00 per hour. An initial retainer is charged at 4 hr minimum plus travel time non-refundable totaling 1,800.00, paid prior to the deposition. The deposition retainer is billed immediately following expert notification requesting a confirmed date for testimony. Once the subpoena for deposition duces tecum has been served, payment is required within 7 business days. If the deposition goes beyond the 4 hour retainer then final billing will be paid within 7 business days after the deposition. If the payment is made at the deposition, then it will be done immediately upon my arrival.**

**Time limit for the deposition is 7 hours maximum from the time the scheduled deposition begins. Breaks are included in the 7 hour time limit. There are no exceptions to the time limit of testimony or the payment requirements.**

 *If a full 7 hour deposition is expected, then the entire amount will be paid prior to the deposition. Total: 2,850.00*

| Deposition/Trial Date Attorney | Style of Case/Court | Event Location |
|---|---|---|
| 8/01/2007 – Deposition<br>Michael Eriksen | S.B. v. Carnival Cruise Line<br>U.S. District Court<br>Southern District of Florida<br>Miami, FL | Miami, FL<br>Deposition |
| 8/21/2007 - Deposition<br>Michael Eriksen | Johnson v. Royal Caribbean<br>U.S. District Court<br>Southern District of FL<br>Miami, FL | West Palm Beach, FL<br>Deposition |
| 9/01/2007 - Deposition<br>Michael Eriksen | Crouch v. Carnival Cruise Line<br>U.S. District Court<br>Southern District of FL<br>Miami, FL | West Palm Beach, FL<br>Deposition |
| 11/22/2007 - Deposition<br>Michael Eriksen | Hall v. Carnival Cruise Line<br>U.S. District Court<br>Southern District of FL<br>Miami, FL | West Palm Beach, FL<br>Deposition |
| 11/14/2008 - Deposition<br>Michael Eriksen | Rapaport  v. Regent Seven Seas<br>U.S. District Court<br>Southern District of FL<br>Miami, FL | West Palm Beach, FL<br>Deposition |
| 04/15/2009 – Deposition<br>Jack Hickey | Berner v. Carnival Cruise Line<br>U.S. District Court<br>Southern District of FL | Miami, FL<br>Deposition |

| | | |
|---|---|---|
| 06/11/2009 – Deposition<br>John Billera | Ged Sr. v. John Gaffney and Holloway Inc<br>U.S District Court<br><br>Southern District of FL<br>Miami, FL | Miami, FL<br>Deposition |
| 3/31/2010-Deposition<br>Joel Barnett | Frisk v. Celebrity Cruise Lines<br>U.S District Court<br>Southern District of FL<br>Miami, FL | Miami, FL<br>Deposition |
| 3/22/2011<br>Mark Press | Mendel v. RCCL<br>U.S District Court<br>Southern District of FL<br>Miami, FL | Miami, FL<br>Deposition |
| 4/3/2011<br>Michael Guilford | Cox v RCCL<br>U.S. District Court<br>Southern District Court<br>Miami, FL | Miami, FL<br>Deposition |
| 7/21/2011<br>David Appleby | Reichow v Celebrity<br>U.S District Court<br>Southern District Court<br>Miami, FL | Miami, FL<br>Deposition |
| 10/15/2011<br>Marcos Gonzalez | Jensen v Carnival Cruise Lines<br>U.S. District Court<br>Southern District Court<br>Miami, FL | Miami, FL<br>Deposition |
| 10/17/2011<br>John McLaughlin | Schubert v Regent Seven Seas<br>U.S. District Court<br>Southern District Court<br>Miami, FL | Miami, FL<br>Depositiion |
| 11/28/2011<br>Jason Margulies | Rinker v Carnival Cruise Lines<br>U.S. District Court<br>Southern District Court<br>Miami, FL | Miami, FL<br>Deposition |
| 06/04/2012<br>Jason Margulies | Burdeaux v RCCL<br>U.S. District Court<br>Southern District Court<br>Miami, FL | Miami, FL<br>Deposition |
| 06/14/2012<br>Phill Gold | Waller v Opium Nightclub<br>U.S. District Court<br>Southern District Court<br>Miami, FL | Miami, FL<br>Deposition |

| | | |
|---|---|---|
| 8/28/2012<br>Michael Black | Ishmael v RCCL<br>U.S District Court<br>Southern District Court<br>Miami, FL | Miami, FL<br>Deposition |
| 9/19/2012<br>Keith Brais | Jane Doe v NCL<br>U.S. District Court<br>Southern District Court<br>Miami, FL | Miami, FL<br>Deposition |
| 2/19/2013<br>Nick Gerson | Dorthy Turk v DCL<br>State Court<br>Brevard County, Florida | Brevard, FL<br>Deposition |
| 2/28/2013-Deposition<br>Ibrahim Reyes Gandara | Jose Miguel Pietri Tello v RCCL<br>U.S District Court<br>Southern District of FL<br>Miami, FL | Miami, FL<br>Deposition |
| 3/5/2013-Deposition<br>Jorge Pedraza<br>Trial testimony | Jomma Mahrassi v RCCL<br>AAA | Miami, FL<br>Deposition |
| 4/19/2013<br>Mike Eriksen | Meyer v Carnival and Cox<br>U.S. District Court<br>Southern District of  Florida<br>Miami, FL | Miami, FL<br>Deposition |
| 4/26/2013<br>Patton Youngblood Jr. | Jans v Carnival Cruise Lines<br>U.S. District Court<br>Southern District of Florida | Miami, FL<br>Deposition |
| 6/28/2013<br>Brian Moore | Burns v RCCL<br>U.S. District Court<br>Southern District of Florida<br>Miami, Florida | Miami, FL<br>Deposition |
| 8/26/2013<br>Irvin Gonzalez<br>Jorge Pedraza | Mahrassi v RCCL<br>Arbitration Hearing<br>Court Testimony | Coral Gables, FL<br>Testimony |
| 8/28/2013<br>Robert Scallione | Bishun v RCCL<br>U.S. District Court<br>Southern District of Florida<br>Miami, Florida | Miami, FL<br>Deposition |

| | | |
|---|---|---|
| 10/10/2013<br>John Billera<br>Deposition | Fran Bitters v Golden Lakes Village, and Master Group Association<br> State Court<br>West Palm Beach County, Florida<br>West Palm Beach, Florida | |
| 11/7/2013<br>John Billera<br>Trial Testimony | Fran Bitters v Golden Lakes Village, and Master Group Association<br>State Court<br>West Palm Beach County, Florida<br>West Palm Beach, Florida | |
| 01/25/2014<br>Carlos Llinas Negrett<br>Deposition | Sarah Kirby v Carnival Carnival<br>U.S. District Court<br>Southern District of Florida | Miami, Florida<br>Deposition |
| 02/27/2014<br>Jonathan Burns | William Heaton v Sunshine cruises Inc.<br>U.S.District Court | Broward, Florida<br>Deposition |
| 04/17/2014<br>Jonah Wolfson | Canales v General motor rental car<br>US District Court<br>Miami Dade County | Broward, Florida<br>Deposition |
| 07/18/2014<br>Jake Munch | Fowler v NCL<br>U.S. District Court<br>Southern District Court of Florida | Miami, Florida<br>Deposition |



**RANDALL W. JAQUES LLC**

Safety & Security consulting

2580 Rampart Way North

Cooper City, Florida 33026

jaquesrandy@hotmail.com

**Terms of Employment**

Our rate of expert and consulting services is $250.00 per hour with a 10 hour minimum, 2,500 non-refundable retainer paid immediately. The $250.00 per hour applies to all work and travel including court appearances, except deposition testimony. Testimony will be billed at $350.00 per hour plus transportation time at the $200.00 rate. I will require a cashier's check prior to the commencement of my deposition if the opposing counsel pays for my time for the deposition. A minimum of 4 hours is due at that time. Both the retainer for initial work and the retainer for deposition and trial testimony are non-refundable.

Once a retainer is received I commence work on the case and the first 10 hours of my work are billed out of the retainer. After the retainer funds have been depleted, I bill twice a month, for the hours worked during that time frame. Failure to pay as agreed can result in a 6% monthly charge to the client.

Ship inspections and out of town assignments are billed separately from the retainer. For out of town or overseas assignments I bill 8 (eight) hours a day plus travel and transportation time. Direct expenses are billed at cost. Payment terms are paid half up front and the remainder plus my expenses upon return from the inspection. The inspection payment is non-refundable.

All travel arrangements are made by the firm and paid for by the firm. I fly economy-class on commuter flights and business class when traveling outside the continental United States. If you require any additional information please contact us.

# RULE 26 REPORT

*Name of Plaintiff*
Melanie Drane as parent and natural guardian of
Alexandra Leblanc, a minor

*Type of Incident*
Sexual Assault of a minor

*Incident Location*
Carnival Magic
Passenger cabin

*Date of Incident*
January 3rd, 2013
0130 - 0230 Hrs.

*Date of Vessel Inspection:*
Not required at this time

*Investigation Conducted by:*
Randall W. Jaques

*Report Requested by:*
*Lipcon, Margulies, Alsina & Winkleman, P.A.*
Jason Margulies Esq.

*Report Submitted:*
August 18th, 2014

---

2580 Rampart Way North, Cooper City, Florida 33026
Tel: (305) 498-3260

## <u>TABLE OF CONTENTS</u>

ASSIGNMENT…………..……………………………………………………3

QUALIFICATIONS…………………………………………………….3/4

MATERIALS REVIEWED……………………………………………...4

DISCUSSION………………………………………………………5/6

OPINIONS……………………………………………….............7/8/9

CONCLUSIONS……………………………………….…..10/11/

12

## ASSIGNMENT

On August 1st, 2014, I was retained by the law offices of Lipcon, Margulies, Alsina & Winkleman P.A. in Miami, Florida, to provide opinions in the case of Alexandra Leblanc, a minor, v. Carnival Corporation. Attorney Jason Margulies Esq., asked me to investigate the policy and procedural violations involving the sexual assault of Ms. Leblanc, and, why the chief security, assistant chief security, security supervisor, and security guards failed to prevent this attack. I was also asked to find out why and how a bottle of whisky known as fireball whisky was brought on the ship without being detected by ship's security.

## QUALIFICATIONS

I, Randall W. Jaques, have been educated and trained in the areas of maritime accidents and injuries as security and safety officer "SSO Ships security officer level IV Netherlands". *Curriculum Vitae and Testimonials attached hereto*.  I have extensive experience investigating and analyzing accidents and injuries that occur while at sea and in port, including tender accidents, slip and falls, sexual assaults, and alcohol/drug related cases over a period of 25 years while employed as a Security Manager, Homicide Investigator, and Expert Witness in maritime accidents. As a ship's security officer, I have extensive experience with the analysis of shipboard policies and procedures. One of the primary duties of a ship's security officer is to analyze existing policies and procedures, as it applies to safety aboard ships, and to contribute to the improvement of those policies and procedures. To this end, I have studied and am familiar with the positions and duties of a cruise ship's crew and the standards of how those duties should be carried out as it relates to shipboard safety and emergencies. I am also experienced in conducting, overseeing, and confirming the training of crewmembers as it relates to emergency,

security, and safety issues. As a shipboard security officer and investigator, I have extensive

experience in analyzing whether adequate policies and procedures were in place and were

properly followed in instances of emergencies and safety issues, including the identification and

elimination of hazardous conditions on a vessel. It is based upon this collective experience with

shipboard duties, policies and procedures, aboard large cruise passenger ships, that I offer my

opinions in this matter.

## <u>MATERIALS REVIEWED</u>

The following case materials were provided to me for review:

- The complaint

- Interview of Melanie Drane (mother)

- Interview of Allan Drane (step father)

- Interview of Eric Schaffer (acquaintance of Allie and witness)

- Interview of Laurel Kakufka (acquaintance of Allie and witness)

- Shipboard medical statement and shipboard medical report

- Security log entry

## DISCUSSION

On January 3rd, 2013, between the hours of 0130 and 0230, Carnival Magic passenger Alexandra Leblanc was witnessed walking in a passenger elevator with perpetrator John Doe, who was later identified as Christopher Smith.  Between the hours of 0130 - 0230, John Doe, AKA Christopher Smith, age 22, asked Alexandra if she wanted to accompany him to his cabin, where his two sisters where having a party. Witness Eric Schaffer told me he that observed the male holding on to Alexandra's arm and guiding her towards the elevator. During our phone interview, Schaffer said, "Alexandra was intoxicated, and the guy was holding her up". Schaffer asked the male who he was, and the male replied "it's all right I'm her brother". It should be noted Schaffer had previously seen Christopher Smith in the Karaoke lounge. Alexandra was also in the Karaoke lounge drinking. This is where Christopher Smith first approached Alexandra. They both got into the elevator and went to the bottom or first deck. Witnesses Schaffer and Kukafka thought this was strange, because Alexandra's cabin was on the deck where she got on the elevator, also they did not believe this person was her brother. Schaffer and Kukafka met Alexandra at the beginning of the voyage and they became friends. They had seen Christopher Smith around the ship, but he was never part of their group.

Once inside the cabin, John Doe, AKA Christopher Smith, gave Alexandra several shots of hard liquor called "Fireball whiskey". Carnival Cruise Lines do not sell this type of liquor onboard. According to Mrs. Drane, after her daughter was given the shots, the two unidentified sisters of the perpetrator left Alexandra in the cabin alone with their adult brother. When the two sisters left, Christopher Smith held Alexandra down on the bed, removed her pants and penetrated her vagina with his penis. This was all done with force and without her consent. When Smith was finished, he shoved her out of the cabin; she was found in the casino sometime

later. Mrs. Drane described her daughter's condition as disoriented, dazed, bruised, and confused, as if she had been drugged.

Witnesses Schaffer, Kukafka, and Butz went to the front desk and made contact with a security guard. After 15 minutes of trying to convince the guard of their fear for their friend's safety, witness Kukafka ran to the Drane's cabin and informed Mrs. Drane of what they felt might had happened to her daughter. Mrs. Drane then ran to the said security guard at the front desk and demanded that he shows witness Schaffer and she a photo of all male passengers age 22 – 25, so that the witness can identify the perpetrator and locate his cabin. After another 20 minutes of continued pleading with security, assistant chief security officer Sathyan, and two other security guards began walking around the ship with a flashlight from club to club. Security still refused to allow witnesses Schaffer or Kukafka to look at pictures of possible suspects ages 20 - 25. Mrs. Drane estimated they were walking around the ship for about 45 minutes prior to finding her daughter in the casino, and she described their search method a "wild goose chase". The total estimated time that Alexandra Leblanc was missing is estimated to be approx.60 minutes.

At approximately 0445 hours, Mrs. Drane filled out a medical report and stood by while a sexual assault physical examination was conducted on her daughter. Apparently the authorities from Grand Cayman came onboard the ship and conducted an investigation. Christopher Smith was detained in his cabin and later taken off the ship by U.S. authorities when the M/V Magic arrived in Galveston, Texas. U.S. authorities and the U.S. attorney general's office are in the process of prosecuting Christopher Smith for sexual assault on a minor. Alexandra Drane is currently receiving treatment in a medical facility and cannot be reached.

## OPINIONS

**Expert Opinion 1:**   On January 3rd, 2013, Carnival Corporation failed to provide a reasonable degree of safety and security for passenger Alexandra Leblanc, a minor. The lack of diligent, vigilant, and professional security practices onboard the M/V. Carnival Magic contributed to the attack on Ms. Leblanc, by creating an opportunity for the attacker to complete this heinous crime against an unsuspecting juvenile.

**Expert Opinion 2:**   M/V Carnival Magic employees were careless, and negligent, allowing a adult male passenger to profile and target a young unsuspecting 15 year old female passenger who was inside the Karaoke lounge. They also failed to prevent Alexandra Leblanc age 15 from drinking alcoholic beverages inside the Karaoke lounge.  Carnival security failed to identify a potential crime against a person, failed to stop and question the adult male in order to verify who he was and why was he steadying a young female by her arm both inside and outside the lounge. A single adult male passenger walking throughout the ship at 0100 hours with a young 15-year-old female passenger is highly suspicious. As such, the security in the Karaoke lounge was either non-existent or negligent in not preventing the service, possession, and or consumption of alcohol by a 15 yr old in a public lounge ; nor in preventing an adult male passenger from targeting and 'taking' (by holding up and walking) an intoxicated 15 yr old from the public lounge.

**Expert Opinion 3:**   Carnival Corporation's corporate security officer and director of safety management are at fault for failing to properly train security personnel in routine investigative procedures. By allowing personnel in entry level positions to make decisions that

can and did effect the safety of a juvenile passenger, Carnival Corporation was carless and negligent.

**Expert Opinion 4:** Carnival's security failed to conduct a timely, thorough, and appropriate investigation into the whereabouts of a juvenile female passenger after she was reported by eyewitnesses to have been seen in a compromised condition with a strange adult male passenger in a location being taken from the deck where her cabin was located. Carnival's security delayed and refused to furnish photographs of passengers meeting the description of the adult male passenger to the eyewitnesses to allow for a positive identification to be made so that security could proceed t that cabin. Rather, security led the parents around the vessel in a wild goose chase effort to find the missing female juvenile passenger with no information or indication that the juvenile would be in a public area aboard the vessel. All of this caused a significant delay in locating the missing juvenile before she was raped in a passenger cabin which could have quickly and readily been identified had security responded appropriately.

**Expert Opinion 5:**   Carnival Corporation failed to follow the Cruise Vessel Security and Safety Act of 2010 H.R. 3360 (b), by failing to provide appropriate and sufficient CCTV video of the events leading to the attack on a juvenile. This evidence would have been critical in showing where the perpetrator took the victim, and would have identified the perpetrator as passenger Christopher Smith in a timely fashion.

**Expert Opinion 6:**   Carnival Corporation is at fault for allowing passenger Christopher Smith to bring an alcoholic beverage known as "Fireball Whiskey" onboard the M/V Magic. By doing this, Carnival employees and the security screening team failed to follow the Carnival "Liquor and Beverage Policy", described by Carnival's website as  *"created in order for Carnival to be able to control the liquor consumption of minors and the quantities consumed that*

*lead to the disruptive behavior of others on board*"[1]. According to the above mentioned policy, guests are only allowed to bring one 750 ml bottle of wine per adult passenger (21 yrs. of age or older).  A fireball whiskey bottle pictured below had no resemblance to a wine bottle.



Exhibit 1 "Fireball Whiskey"[2]

---

[1] Retrieved from Carnival Cruise Line's original website
http://www.carnival.com/CMS/FAQs/Liquor_and_Beverage_Consumption_Policy.aspx, on Aug 17th, 2014
[2] Photo used for illustration purposes only, to show the difference between a wine bottle and the Fireball Whiskey bottle. Retrieved on Aug 17th, 2014, from original website http://foodriot.com/2013/08/01/fireball-whiskey-a-love-letter



Exhibit 2, Alexandra Leblanc age 15

## **Conclusion**

The security department and security management onboard the M/V Carnival Magic elected to deem the reporting a potential crime "sexual assault" in progress as untruthful. In the security report, the assistant chief security officer Sathyan documented that it only took 15 minutes after searching the ship to locate Ms. Leblanc. Mr. and Mrs. Drane, and witnesses Schaffer and Kukafka, advised me that it took closer to an hour to locate the young victim, which deems the assistant security officer's stamen as false. Mr. Schaffer repeatedly asked to see the pictures of 20 - 25 yr old males on the bottom cabin decks. His requests were repeatedly denied. This type of behavior by the ships security staff is completely unacceptable. The IMO, SOLAS, ISM, ISPS, and the STCW cover in detail how to report missing persons and how to react in a potential unforeseen emergency situation. Cases in the southern district court of Florida, such as Rinker v Carnival, Boney v Carnival, Traber v Carnival, Appelbaum v Carnival,  all establish precedents of failure by Carnival's security department to provide swift, diligent, and professional responses to passenger emergencies. If there is possibility that a passenger is in

peril, reported by a viable witness, then immediate action must be taken. The ACSO must be called and he must call the CSO. In the case of a female juvenile being led away to a stranger's cabin, the CSO must allow witnesses to identify the suspect. When this identification is made, then the CSO must notify the Staff Captain to respond to the cabin where this may be occurring. In this case as in numerous other cases, CCL security refused to believe what is being reported to them. Instead, time is wasted and the chain of command is foregone. Carnival security guards should have seen Ms. Leblanc in the Karaoke lounge.  Exhibit 2 shown above is a picture of Alexandra Leblanc, she is 15 years of age, and she looks 15 years of age. CCL security guards should have observed Ms. Leblanc in the lounge or immediately after she exited the lounge. They should have approached her, asked what her cabin number was, and made contact with her parents. They would have noticed that Ms. Leblanc had been drinking, and they should have followed CCL SMS policy and procedures and escorted Ms. Leblanc back to her cabin.

In closing, it has been my experience that lack of control and/or leadership in the security department, leads to foregoing the company's set policies and procedures. Under the ISPS, the ship's security officer has the obligation to oversee and manage all security operations, and to protect the passengers onboard. Unfortunately, on January 3rd, 2013, aboard the M/V Magic, the ship's security officer failed his duties to protect the safety and security of Alexandra Leblanc, a minor passenger onboard. Throughout my investigations onboard Carnival vessels, a pattern of inappropriately handling passenger complaints is being revealed. This type of poor management has been documented over the past decade. It appears that the company security officer would rather dismiss reports of sexual assaults so these crimes aboard Carnival ships remain unreported. As a retired law enforcement detective, I find this type of continued disregard for passenger safety to verge on criminal culpable negligence, which is failure to foresee and so

*Melanie Drane, as parent and natural guardian of Alexandra Leblanc, a minor v Carnival Corporation*   12

allow otherwise avoidable dangers to manifest. This is willful blindness by Carnival where the

company intentionally avoids the reality of the situation.

Randall W. Jaques

Maritime Safety and Security Expert

2580 Rampart Way North

Cooper City, Florida 33026

305-498-3260

jaquesrandy@hotmail.com

References:

1. IMO International Maritime Organization, Chapter Passenger ships

2. ISM International Safe Management for passengers ships chapter X1 and X2

3. Cruise vessel security and safety act of 2010 section 3, H.R. 3360 (b) video
   recording.

4. ISPS Codes, supplying proper security to protect passengers and crew